UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CIVIL ACTION NO. 0:17-CV-04-WOB

JOHN M. SMITH,                                                    PETITIONER,

v.                              **RECOMMENDED DISPOSITION**

KATHY LITTERAL,                                                  RESPONDENT.

\*\*\* \*\*\* \*\*\* \*\*\* \*\*\*

John M. Smith filed an application for writ of habeas corpus on January 12, 2017, pursuant to 28 U.S.C. § 2254, asserting fourteen separate claims of error by the Kentucky appellate courts. [R. 1]. After holding this matter in abeyance while Smith brought seven of his claims before the Kentucky trial court, Kathy Litteral ("Respondent") filed her response in opposition. [R. 7, 23]. Smith then submitted his reply. [R. 25]. The issues being fully briefed are now ripe for review.

The Court RECOMMENDS that Smith's Section 2254 Petition be DENIED on all grounds. First,  he offers insufficient conclusory allegations without the necessary and specific factual support for his motion; and, second,  the Section 2254 Petition should be DENIED on grounds four and seven through fourteen as procedurally defaulted, DENIED on grounds one through three and five through six as meritless, and DISMISSED WITH PREJUDICE.

## I.     FACTS AND PROCEDURAL HISTORY

 Following a jury trial in the Greenup Circuit Court on February 1, 2011, Smith was found guilty of first-degree robbery, second-degree persistent felony offender ("PFO"), and unauthorized use of a motor vehicle. [R. 1 at p. 1]. Smith was sentenced on February 10, 2011, and he is currently serving a term of thirty years imprisonment in the Eastern Kentucky Correctional Complex. [*Id.*]

Smith appealed by right directly to the Kentucky Supreme Court, which summarized the facts as follows:

> Around 7:00 p.m. on September 26, 2008, a man robbed K.D.'s Fuel in South Shore, Kentucky at gunpoint. The man was wearing two bandanas: one over the top of his head, and one covering the lower half of his face from the nose down. The store clerk emptied the register and handed the robber approximately $500. Because of the bandanas, the clerk saw only the robber's eyes; however, he observed the robber driving a teal Geo Tracker. The Geo, which was owned by Brian Simpson, was taken from Simpson's place of employment without his knowledge at some point before the robbery, used during the robbery, and recovered a few blocks away later that night.

> A customer outside K.D.'s at the time, Lloyd Davis, witnessed the robbery and drove around the fuel station to get the license plate number from the robber's vehicle. As the robber drove past Davis, the two men made eye-contact. The bandana that had been covering the lower half of the robber's face was gone, and Davis recognized Appellant as the robber. Davis then made an anonymous call to the police and gave the dispatcher the Geo's license plate number and a brief description of the vehicle.

> Local pawnshop owner, Donnie Townsend, also observed Appellant driving Brian Simpson's Geo Tracker the night of the robbery. Townsend had done business with Appellant and Appellant's wife a few times in the months preceding the robbery, including the day of the robbery. Around 6:45 or 7:00 that evening, Townsend saw Appellant driving the Geo toward K.D.'s.

> . . .

> On September 28, 2008, two days after the robbery, police arrested Appellant and searched his home. He was released on bond on October 17, 2008 and indicted on December 5, 2008. Appellant's bond was revoked at his January 8, 2009 arraignment for returning to K.D.'s with another person and taunting the clerk who had been robbed by saying, "[w]e've come to rob you, since that's what you are used to." Trial was set for July 6, 2009.

> Approximately one month before the scheduled trial date and over eight months after the arrest, the Commonwealth requested DNA testing. On June 11, the court held a hearing on the motion where the defense objected and made its first oral motion for a speedy trial. The court, however, granted the Commonwealth's request notwithstanding the Commonwealth's admission that it would be surprised if the DNA test results would be back by the July 6 trial date.

> At approximately 12:15 a.m. on June 19, 2009, two sheriff's deputies went to the Greenup County Detention Center to obtain a DNA sample from Appellant. Although

Appellant initially agreed to provide a sample, he ultimately insisted on having his lawyer present. The deputies were unable to contact Appellant's lawyer at that time, and they left without obtaining the DNA sample. Appellant's refusal caused the Commonwealth a four- to seven-day delay.

On June 22, 2009, the Commonwealth moved for a continuance of the trial; it also moved the court to hold Appellant in contempt for refusing to submit to the DNA testing in contravention of a court order. At a scheduled suppression hearing the next day, the Commonwealth informed the court that it had originally wanted to submit the DNA sample for testing on June 19 and had planned to request a rush on the test in an attempt to get the results back by trial. While the court scolded Appellant for not submitting to the sample on June 19, Appellant stated his willingness to submit to the sample that day in court. The Commonwealth declined Appellant's offer and stated that a deputy would obtain the sample later in the week.

Two days later, the Commonwealth informed the court that it would not be able to obtain the DNA testing results by the July 6 trial date, due in part to the upcoming holiday weekend. Appellant argued that a continuance would violate his right to a speedy trial. The court pointed to Appellant's initial failure to comply with the court-ordered DNA testing and continued the trial to April 5, 2010.

Appellant submitted a written *pro se* motion in August, reasserting his right to a speedy trial; it was filed the following week. On November 12, 2009, the court amended Appellant's bond to $10,000 cash; he was released later that day on bond with an order to appear in court on March 25, 2010 for a pretrial conference. After Appellant was released from jail in Kentucky, he was arrested and incarcerated in Ohio. As a result of this incarceration, he failed to appear at both his pretrial conference and trial, and the court again had to reschedule his trial. On May 3, 2010, Appellant waived extradition and returned to a Kentucky jail. In June, the court set a final trial date for January 31, 2011—two years and four months after Appellant's original arrest. Additional dates and proceedings will be discussed where relevant.

*Smith v. Commonwealth*, 361 S.W.3d 908, 912-14 (Ky. 2012).

At the Kentucky Supreme Court, Smith raised the following issues: (1) whether his right to a speedy trial was violated; (2) whether the trial court erred when it granted his request for a directed verdict; (3) whether the trial court erred when it imposed court costs and fines of $281; and (4) whether the trial court erred in ordering $500 plus five percent interest in restitution to be paid. *Id.* at 913-22. The Kentucky Supreme Court affirmed Smith's convictions for first-degree robbery,

unauthorized use of a motor vehicle, and the PFO determination, but reversed the trial court's order requiring him to pay court costs and fines. *Id.* at 922.

Following the Kentucky Supreme Court's decision, Smith filed a *pro se* motion to vacate his sentence pursuant to Kentucky Rule of Criminal Procedure ("RCr") 11.42. [R. 1-4]. An evidentiary hearing was conducted on November 8, 2013, and Smith was appointed a new attorney, Christine Foster. [*Id.*] At the evidentiary hearing, Smith's former attorney Kevin Martz and the director of the Department of Public Advocacy ("DPA") Brian Hewlett were called to testify. [*Id.*] The trial court ultimately entered an order denying Smith's RCr 11.42 motion. [R. 1-5]. In response to the trial court's order, Smith filed a motion to vacate the trial court's denial of his RCr 11.42 pursuant to Kentucky Rule of Civil Procedure ("CR") 60.02 based on allegations of fraud by Foster. [R. 1-8]. Smith's motion was again denied by the trial court and he appealed both trial court rulings, which were consolidated at the Kentucky Court of Appeals. [R. 1-7, 1-9]. The Kentucky Court of Appeals first considered Smith's RCr 11.42 claim concerning seven allegations of ineffective assistance of counsel, but it ultimately affirmed the trial court's determination. [R. 1-7 at p. 6-13]. It then considered Smith's CR 60.02 claim and held that the trial court did not abuse its discretion when it denied Smith's motion. [R. 1-7 at 13-14].

On January 12, 2017, Smith timely filed the instant action pursuant to 28 U.S.C. § 2254, raising the following four claims in his petition:

1. Smith's right to a speedy trial under the Sixth Amendment to the United States Constitution was violated [R. 1 at p. 6];

2. The state court erred by failing to direct a verdict of acquittal [R. 1 at p. 8];

3. Smith's was denied his right to effective assistance of counsel under the Sixth Amendment

**4** of **35**

[R. 1 at p. 9]; and

4. The state prosecutor committed prosecutorial misconduct [R. 1 at p. 11];

In Smith's petition, he also stated that he attached a memorandum in support for his remaining ten claims. [R. 1 at p. 13]. According to his separate memorandum in support:

5. Smith was deprived of due process of law with the issue being raised in a CR 60.02 motion in the state trial court and Kentucky Court of Appeals [R. 1-1 at p. 1];

6. Smith's counsel had a conflict of interest that is related to his CR 60.02 motion in the state trial court and appeal to the Kentucky Court of Appeals [*Id.*];

7. Ground 7 is authorized "by U.S. Const. Amend. V, VI, VIV, 'Manifest injustice doctrine', 'Attorney-Client doctrine', and U.S. Const. Preamble" [R. 1-1 at p. 2];

8. Ground 8 is authorized by U.S. Const. Art. 4 Sec. 2, Cl. 1, U.S. Const. Amend. 9, 'Separation of Powers Doctrine', Common laws on Writs for Quo Warranto, Article 6's 'Supremacy Clause', common law on in personam jurisdiction, Federal Contract laws, the U.S. Constitution when reviewed as a contract, and U.S. Const. Amend. V and XIV" [*Id.*];

9. Ground 9 is authorized "by the Federalist Papers, Federal Rules of Evidence, U.S. Const. Amend. V and XIV, 'Presumption of Innocence Doctrine", and 'Reasonable Doubt Doctrine'" [*Id.*];

10. Ground 10 is authorized "by 'Reasonable Doubt Doctrine', U.S. Const. Amend. V and XIV [*Id.*];

11. Ground 11 is authorized "by the 'Actual Innocence Doctrine'" [*Id.*];

12. Ground 12 is authorized "by the '[J]udicial Integrity doctrine', U.S. Const. Amend. V and XIV, and the 'Cumulative Error Doctrine'" [*Id.*];

13. Ground 13 is authorized "by 26 USCS sec. 501(c)(3), 'Separation of Powers Doctrine', 'Separation of Church and State Doctrine' (In relation to a non-profit organization being a political or governmental branch), U.S. Const. Amend. V and XIV" [*Id.*];

14. Ground 14 is authorized "by U.S. Const. Amend. V, XIV, 'Cumulative Error Doctrine', 'Manifest Injustice Doctrine', U.S. Const. Amend. IX." [*Id.*]

In his federal habeas petition, Smith stated that Grounds 7-14 were being raised in the Morgan Circuit Court as grounds for his state habeas petition, and he requested the Court to hold his federal habeas action in abeyance until he exhausted his state claims. [R. 1-1, 1-10]. This Court stayed Smith's federal habeas petition pending the exhaustion of his state habeas petition. [R. 7]. The Morgan Circuit Court eventually entered an order dismissing Smith's petition on June 15, 2018. [R. 23-2 at p. 221-22]. After being notified that Smith did not appeal the denial of his state habeas petition, this Court lifted the stay in this case and directed the Respondent to submit her response to Smith's habeas petition. [R. 22].

Respondent filed her response on October 8, 2018, arguing that: (1) the Kentucky Supreme Court's decision concerning Smith's right to a speedy trial was not contrary to or an unreasonable application of clearly established law; (2) the Kentucky Supreme Court correctly concluded that there was sufficient evidence to support the trial court's decision to deny Smith's request for a directed verdict; (3) the Kentucky Court of Appeals' decision concerning his ineffective assistance of counsel claim was not contrary to or an unreasonable application of clearly established law; (4) Smith's claims pursuant to CR 60.02 concerning prosecutorial misconduct and conflict of interest are procedurally defaulted because the issues were not properly preserved in the trial court and presented in his appellate brief to the Kentucky Court of Appeals; and (5) grounds seven through fourteen are also

procedurally defaulted because Smith did not appeal the trial court's denial of his claims in his state habeas petition. [R. 23 at 360-374].

## II. STANDARD OF REVIEW

This Court is required to review Smith's request for habeas corpus relief pursuant to the standards set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which allows state prisoners to seek federal habeas corpus relief on the ground that they are being held in custody in violation of the Constitution, law, or treaties of the United States. 28 U.S.C. § 2254(a); *Reed v. Farley*, 512 U.S. 339, 347 (1994). The AEDPA states:

> An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C § 2254(d)(1)-(2). However, the AEDPA's demanding standard only applies with respect to claims that were adjudicated on the merits in state court. Thus, before addressing the merits of any claim in this habeas proceeding, the Court must first find that certain procedural prerequisites are present. *See Lambrix v. Singletary*, 520 U.S. 518, 524 (1997) (stating that before reviewing the merits of a habeas petition, a court must consider any applicable procedural-bar issue which would preclude consideration of claims on the merits).  The requirement of giving state courts the first opportunity to cure a constitutional claim stems from the understanding that state courts are obligated to follow federal law, and from the desire for comity between the state and federal court systems. *O'Sullivan*

*v. Boerckel*, 526 U.S. 838, 844-45 (1999).

## III.    ANALYSIS

### A. Insufficient Factual and Legal Support Pursuant to Rule 2 of Rules Governing Section 2254 Cases

The first issue before this Court is whether Smith's fourteen claims of error are sufficiently pled in his habeas petition to allow this Court to address his claims on the merits. According to Rule 2(c) of the Rules Governing Section 2254 Cases, "[t]he petition must: (1) specify all grounds for relief available to the petitioner; (2) state the facts supporting each ground; (3) state the relief requested; (4) be printed, typewritten, or legibly handwritten; and (5) be signed under penalty of perjury by the petitioner or by a person authorized to sign it for the petitioner under 28 U.S.C. 2242." In the 1976 Advisory Committee Notes to Rule 2, mere conclusions of law that are unsupported by facts to the claims asserted are "obviously deficient."

The first four claims in Smith's habeas petition conclusively assert errors: (1) denying his right to a speedy trial, (2) his right to a directed verdict, (3) denying his seven claims of ineffective assistance of counsel, and (4) denying his claim of prosecutorial misconduct. [R. 1 at p. 6-11]. The remaining ten grounds of error are merely Smith's assertions that: (1) he was deprived of full and fair access to his evidentiary hearing pursuant to CR 60.02 under an allegation of fraud because Foster sabotaged his hearing in ground five; (2) a further allegation of a conflict of interest; and (3) seven remaining claims of error that are not clearly asserted. [R. 1-1 at p. 1-2].

All fourteen of Smith's claims fail from the outset because he fails to set forth any specific facts to support his legal assertions of error by the state appellate courts. First, grounds seven through fourteen do not sufficiently specify Smith's grounds of error, and there is no stated relief requested as required by Rule 2(c)(1) and (3) of the Rules Governing Section 2254 Cases. Second, all fourteen

grounds of error do not meet the well-pleaded complaint rule. Notice pleadings are insufficient "for the petition is expected to state facts that point to a 'real possibility of constitutional error.'" Advisory Committee Note to Rule 4, Rules Governing Section 2254 Cases (quoting *Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir. 1970)). Statements of "generalizations and conclusions" are insufficient, and "notice" pleadings are not accepted in habeas corpus proceedings. *Aubut*, 431 F.2d at 689. This Court is not required to review the voluminous state record to search and determine whether any facts support Smith's claims of error. *See Adams v. Armontrout*, 897 F.2d 332, 333 (8th Cir. 1990) (stating that to require such a reviewing court to review the voluminous record to conjure up the petitioner's claims "would pose an insuperable burden on already strained judicial resources"); *see also Passic v. Michigan*, 98 F.Supp. 1015, 1016-17 (E.D. Mich. Aug. 9, 1951) (holding that "[t]he law does not require, nor does justice demand, that a judge must grope through [thousands of pages] of irrational, prolix, and redundant pleadings, containing matters foreign to the issue involved in a proceeding for a writ of habeas corpus in order to determine the grounds of petitioner's complaint").

Although Smith attached the state court records that contain the arguments he briefed before the state appellate courts, the arguments in this case brief do not explain how the state decisions are "contrary to" or "unreasonable" applications to established federal law, because he merely reiterates the arguments he made to the state appellate courts. 28 U.S.C § 2254(d)(1)-(2). In other words, by merely attaching the state court record and making no further factual assertions to support each ground as required by Rule 2(c)(2) of the Rules Governing Section 2254 Cases, and by not developing any further legal authority to support his contention that the Kentucky appellate court's decisions were "contrary to" or "unreasonable" applications of federal law, this Court is unable to review his claims pursuant to the standard set forth in the AEDPA and determine whether Smith is entitled

federal habeas corpus relief. *See Sanborn v. Parker*, 2005 WL 5190487, at *74 (W.D. Ky. Jan. 12, 2005) (finding the petitioner's conclusory legal allegations were insufficient without specific factual support). Therefore, because Smith offered only conclusory legal allegations without the necessary and specific factual support, this Court cannot determine whether his fourteen grounds of error are meritorious. Accordingly, it is recommended that his claims should be denied.

### B. Alternative Analysis Addressing Smith's Habeas Petition:

Alternatively, out of an abundance of caution, this Court will liberally construe Smith's habeas petition for purposes of this Recommended Disposition because he is proceeding *pro se*. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). For the reasons addressed below, Smith's claims should nevertheless be denied as procedurally defaulted and meritless.

#### a. Procedural Default on Grounds 4 and 7-14 of Smith's Habeas Petition

In this case, Respondent correctly argues that grounds four and seven through fourteen of Smith's habeas petition are procedurally defaulted. [R. 23]. "Procedural default is a threshold rule that a court generally considers before reviewing the applicable law and available remedies in a habeas petition." *Lovins v. Parker*, 712 F.3d 283, 294 (6th Cir. 2013). A habeas petitioner procedurally defaults on a federal constitutional claim in the state courts if he or she fails to comply with an independent and adequate state procedural rule and thereby bars federal courts from reviewing his federal claim. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). This occurs when a petition fails to properly raise a claim in state court or fails to pursue it through the state's ordinary appellate review procedures. *Williams v. Mitchell*, 792 F.3d 606, 613 (6th Cir. 2015). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's

established appellate review process." In other words, procedural default is established when:

> (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforce the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default.

*Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010). In this case, the records reveal that Smith failed to comply with Kentucky's procedural rules for exhausting claims of constitutional concern.

First, the record reflects that ground four was not appealed. In ground four, Smith alleges that the state prosecutor committed prosecutorial misconduct. [R. 1 at p. 11]. The record reflects first that Smith raised the issue of prosecutorial misconduct in his RCr 11.42 motion to the Greenup Circuit Court. [R. 1-4]. But in his brief to the Kentucky Court of Appeals, Smith did not raise the issue of prosecutorial misconduct as he only raised the following issues: (1) ineffective assistance of counsel when his trial counsel failed to move for a continuance when the prosecution pulled a trial ambush; (2) ineffective assistance of counsel when Martz failed to investigate and call alibi witness for his defense; (3) ineffective assistance of counsel when Martz failed to impeach the prosecution's witness with prior inconsistent statements and failed to cross-examine the witness for bias and motive to fabricate; (4) ineffective assistance of counsel when Martz failed to object and allowed the Commonwealth to use perjured testimony to convict him; (5) ineffective assistance of counsel when Martz failed to call Joshua Hynes as a defense witness; and (6) deprivation of his access to RCr 11.42 relief when his appointed counsel intentionally sabotaged his RCr. 11.42 evidentiary hearing through fraud in the proceedings to protect her co-worker and Martz. [R. 23-2 at p. 95-158]. Thus, the state court was not given the opportunity to address any potential issues of due process in ground four. *See Mitchell*, 792 F.3d at 613. Moreover, there does not appear to be any other remedy available in the Kentucky state courts due to Smith's failure to bring this claim on direct appeal. *See Wainwright v.*

*Sykes*, 433 U.S. 72, 87 (1977) (stating that claims that have not been previously presented to the state courts for adjudication are not properly exhausted and cannot serve as a formidable challenge in federal habeas petitions). Therefore, since there is no indication that Smith presented this issue on appeal, ground four is procedurally defaulted.

In ground six, Smith alleges that attorney Foster had a conflict of interest with his former counsel Martz at his evidentiary hearing. [R. 1-1 at p. 1]. The record reflects that ground six was broadly raised in the trial court under Smith's fraud allegation to vacate the trial court's 11.42 order pursuant to CR 60.02, and this argument was further developed on appeal when Smith alleged Foster "had an absolute conflict of interest and lied to Smith about what she would do at the evidentiary hearing and who she would call as witnesses." *See* [R. 1-10 at p. 13; R. 23-2 at p. 27]. Respondent argues that ground six is procedurally defaulted because it was not properly preserved in the trial court. [R. 23 at 371-72]. However, the Kentucky Court of Appeals did not expressly rely on a procedural deficiency when Smith briefed the issues relating to the denial of his CR 60.02 motion, which means this Court may conduct a habeas review of his conflict of interest claim. *See Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985); *see also Bowling v. Parker*, 344 F.3d 487, 499 (6th Cir. 2003) (proceeding to consideration of the merits of petitioners claims because the Kentucky Supreme Court reviewed the ineffective assistance of counsel claim on the merits, in spite of a procedural bar to review). The Kentucky Court of Appeals considered Smith's allegation "that he was deprived [of] full and fair access to RCr 11.42 relief when his appointed counsel sabotaged his evidentiary hearing through fraud to protect her co-worker [Martz]." [R. 1-7 at p. 13]. Smith also explained in his memorandum in support of his habeas petition that grounds five and six arise from his CR 60.02 motion filed in the trial court that was subsequently appealed and denied. [R. 1-1 at p. 1]. Therefore,

contrary to Respondent's assertion that she was unable to locate Smith's claim of conflict of interest, it appears that this ground was properly brought and considered by the Kentucky Court of Appeals, and it is not procedurally defaulted since the state court did not expressly rely on Smith's procedural deficiencies of failure to preserve the issue in the trial court. Accordingly, this Court will address the merits of this claim in the merit section below.

Second, although grounds seven through fourteen were raised in Smith's state habeas petition to the Morgan Circuit Court, he failed to appeal the trial court's denial of his state habeas request. *See* [R. 21]. Again, in Kentucky, any issue that could have been raised on direct appeal must be raised or it is procedurally defaulted. *St. Clair v. Commonwealth*, 451 S.W.3d 597, 613 (Ky. 2014); *see also Hampton v. Commonwealth*, 133 S.W.3d 438, 444 (Ky. 2004) (stating "a litigant may not raise on a subsequent appeal any question that could have been raised as well as those that were raised upon a former appeal"). Like ground four, Smith failed to comply with Kentucky's procedural rules for grounds seven through fourteen and the remedy for these grounds are no longer available to exhaust. Therefore, grounds seven through fourteen are procedurally defaulted since there is no indication that Smith presented them on appeal.

The Court's analysis does not end after a finding that a petitioner's claims are procedurally defaulted. A petitioner who had the opportunity to raise constitutional issues in a state postconviction proceeding but failed to do so has waived those claims for purposes of federal habeas review unless he can demonstrate (1) cause for the procedural default and (2) actual prejudice from the alleged constitutional error. *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). Moreover, even if cause and prejudice cannot be established, the petitioner may alternatively show that a miscarriage of justice will result from enforcing the procedural default in the petitioner's case. *Seymour v. Walker*, 224 F.3d

542, 550 (6th Cir. 2000). Smith presents no evidence to support either avenue of relief.

"Cause" ordinarily turns on whether the prisoner can show that "some objective factor external to the defense" impeded his efforts to comply with the State's procedural rule. *Coleman*, 501 U.S. at 753. "[O]nly where a prisoner is impeded or obstructed in complying with the State's procedures will a federal habeas court excuse the prisoner from the usual sanction of default." *Martinez v. Ryan*, 566 U.S. 1, 13 (2012). "Habeas petitioners cannot rely on conclusory assertions of cause and prejudice to overcome procedural default." *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006). The record does not indicate that Smith was obstructed from complying with Kentucky's procedures. Again, Smith does not address Respondent's assertion of procedural default. Nevertheless, a review of the record reveals that Smith was not obstructed from presenting any of his claims of error on appeal because he submitted at least two separate appeals to the state appellate courts without issue. *See* [R. 1-3, 1-6]. Therefore, Smith cannot show that cause for his procedural default, and this Court need not address any alleged issue of prejudice because he did not make a showing of cause.

Finally, even if a petitioner fails to show actual cause and prejudice, he may be excused of his procedural default in extraordinary situations if he can show that "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. This showing requires the petitioner to present a "colorable showing of factual innocence" based off new and reliable evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent. *McCleskey v. Zant*, 499 U.S. 467 (1991). It cannot be said from the facts presented that a fundamental miscarriage of justice occurred because the evidence considered by the jury shows reasonable proof that Smith's guilt based on eyewitness testimony connecting him to the crimes of

first-degree robbery, second-degree PFO, and unauthorized use of a motor vehicle. [R. 23-2 at p. 90]. Contrary to his assertion of actual innocence, the evidence presented to the Kentucky Supreme Court does nothing to show that a constitutional violation has probably resulted in a conviction of someone who is actually innocent. *Zant*, 499 U.S. at 467. Therefore, Smith does not meet his burden to show a fundamental miscarriage of justice.

In sum, Smith procedurally defaulted grounds four and seven through fourteen because he did not give the state court the opportunity to address the potential error. Smith also does not address the issues of cause, prejudice, or miscarriage of justice in his briefing. Nevertheless, a review of the state record does not indicate that Smith could establish cause, prejudice, or a miscarriage of justice. Therefore, under the doctrine of procedural default, grounds four and seven through fourteen are precluded from review of this Court and are consequently recommended to be denied.

### b. Kentucky Appellate Court's Rulings

Smith argues only five possible claim of error that were properly exhausted in state court: (1) the Kentucky Supreme Court erred in its denial of his right to a speedy trial; (2) the Kentucky Supreme Court erred in its denial of his directed verdict of acquittal; (3) the Kentucky Court of Appeals erred in denying his RCr 11.42 motion to vacate because his counsel committed seven grounds of ineffective assistance of counsel; (4) the Kentucky Court of Appeals erred when it held that Smith was not deprived of full and fair access to his RCr 11.42 motion because Foster sabotaged his evidentiary hearing; and (5) the Kentucky Court of Appeals erred when it denied his CR 60.02 allegation of fraud on a theory that Foster had a conflict of interest. [R. 1 at p. 6-11; R. 1-1 at p. 1]. After reviewing the records, the undersigned finds that the Kentucky appellate courts provided sufficient determinations that were not contrary to established law or an objectively unreasonable

application of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d)(2).

Pursuant to the standards established under the AEDPA, Congress recognized the foundational principle that "[s]tate courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 571 U.S. 12, 19, 20 (2013). Accordingly, Congress has limited the availability of federal habeas relief "with respect to any claim" the state courts "adjudicated on the merits." 28 U.S.C. § 2254(d). This means for this Court to grant Smith's habeas petition, he must establish the Kentucky appellate courts based its decision on either a "contrary" or an "unreasonable application" of federal law, or the decision was "based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2).

A state court adjudication is "contrary to" United Supreme Court precedent under 28 U.S.C. § 2254(d)(1) if the state court "arrives at a conclusion opposite to that reached by the [Supreme Court] on a question of law or if the state court decides a case differently than the [Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court adjudication is an "unreasonable" application of Federal law pursuant to § 2254(d)(1) if the state court "identifies the correct governing legal principal . . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.* Where "[n]o precedent of [the Supreme Court] clearly forecloses" a state court's ruling, it simply cannot be an unreasonable application of Supreme Court precedent. *Woods v. Etherton*, 136 S.Ct. 1149, 1152 (per curiam). A federal habeas court may not grant relief simply by concluding that the relevant state court decision applied clearly established federal law erroneously or incorrectly; the "application must also be unreasonable." *Id.* at 411. In other words, an unreasonable application of clearly established federal law occurs when the challenged state-court ruling rested on "an error well understood and comprehended in existing law beyond any possibility

for fair-minded disagreement." *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013).

Under § 2254(d)(2), the "unreasonable determination" clause, "a state-court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Burt*, 571 U.S. at 18. The petitioner's burden is made even heavier by the fact that a federal court is "limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181. The question for the court is "not whether a federal court believes the state court's determination was incorrect but whether the determination was unreasonable—a substantially higher burden." *Schriro v. Langrigan*, 550 U.S. 465, 473 (2007).

Federal courts do not analyze a petitioner's claim *de novo* under § 2254. Rather, a state court's factual determinations "are presumed correct absent clear and convincing evidence to the contrary." § 2254(e)(1). The Court must give complete deference to evidence-supported state court findings of fact pursuant to the presumption of correctness. 28 U.S.C. § 2254(e)(1). A state court decision, adjudicated on the merits based on a factual determination, will not be overturned on factual grounds unless objectively unreasonable considering the evidence presented in the state-court proceeding. § 2254(d)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). Thus, "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents." *Nevada v. Jackson*, 569 U.S. 505, 508 (2013) (per curiam) (internal quotation marks omitted). "[C]ircuit precedent does not constitute clearly established federal law" under the AEDPA. *Parker v. Matthews*, 567 U.S. 37, 48 (2012). Therefore, § 2254 creates "a highly deferential standard for evaluating state-court rulings," and demands that "state-court decisions be given the benefit of the

doubt." *Davis v. Lafler*, 658 F.3d 525, 530 (6th Cir. 2011). Section 2254 has essentially erected a "formidable barrier" to federal habeas relief for those prisoners whose claims were fully adjudicated in state court, requiring they show that the state court's ruling "was so lacking in justification that there was an error . . . beyond any possibility for fair-minded disagreement." *Titlow*, 571 U.S. at 20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). Section 2254 relief is grounded in the rationale that federal habeas review exists only to ensure that individuals are not unconstitutionally imprisoned; therefore, it is intended to cure only serious constitutional errors, not merely to correct errors of fact or to relitigate state adjudications. *See Herrera v. Collins*, 506 U.S. 390, 401 (1993) (stating "[f]ederal courts are not forums in which to re-litigate state trials").

### i. Ground 1: the Kentucky Supreme Court's Denial of Smith's Speedy Trial Allegation is not Contrary to or an Unreasonable Application of Established Federal Law

In ground one, Smith asserts that the Kentucky Supreme Court erred when it determined that his right to a speedy trial was not violated. [R. 1 at p. 6]. The Kentucky Supreme Court held that while the delay in bringing Smith's case was presumptively prejudicial, the *Barker* factors did not weigh in favor of establishing a constitutional violation occurred. *Smith*, 361 S.W.3d at 920. "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. CONST. amend. VI. A four-factor balancing test is considered in determining whether the Constitutional right to a speedy trial has been violated: (1) length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). Courts must use an *ad hoc* analysis when balancing these factors in order to reach its conclusion. *Id.*

The first factor is a threshold inquiry. *Id.* Any delay of more than one year—no matter its

cause—triggers an analysis of the remaining factors. *Doggett v. United States*, 505 U.S. 647, 651-52 (1992). The "length of the delay" is the time between the earlier of the arrest or the indictment and the time the trial begins. *Dillingham v. United States*, 423 U.S. 63 (1975). The Kentucky Supreme Court recognized that after Smith was arrested, there was a delay of two years and four months. *Smith*, 361 S.W.3d at 914. Thus, because of this delay, the Kentucky Supreme Court correctly concluded this threshold factor was met and reviewed the remaining three factors in *Barker*. *Id.* at 914-15.

The Second *Barker* factor focuses on the reason for the delay. *Barker*, 407 U.S. at 530. A delay motivated by the government's bad faith, harassment, or attempts to seek a tactical advantage weighs heavily in favor of a constitutional violation, while neutral reasons, such as negligence, weigh less heavily. *Barker*, 407 U.S. at 531. Valid reasons for a delay, such as resolving a defendant's pretrial motions, weigh against a violation. *Id.* There were two delays relevant to the *Barker* analysis: (1) the trial court's decision to grant the Commonwealth's motion for a continuance, and (2) Smith's failure to appear at his pretrial conference and trial. *See Smith*, 361 S.W.3d at 915. The Kentucky Supreme Court held that the reasons-for-delay factor does not weigh in Smith's favor because both the Commonwealth and Smith were equally at fault for the two year and four-month delay. *Id.* at 917.

Turning first to the Commonwealth's motion for a continuance, the Kentucky Supreme Court stated that the robbery occurred on September 26, 2008, and Smith was arrested on September on September 28, 2008. *Id.* at 915. The Commonwealth apparently did not attempt to procure DNA samples until one month before the trial date, when the Commonwealth moved for a continuance. *Id.* Although there was some dispute whether the DNA could be tested before the trial date, the trial court granted the Commonwealth's motion for a continuance, and the trial date was moved nineteen months after Smith's arrest. *Id.* at 916. The Kentucky Supreme Court determined that given the

Commonwealth's inability to proffer any valid reason for why the DNA could not have been collected before it requested one month before trial, the continuance weighed in favor of Smith. *Id.*

Turning next to Smith's failure to appear, the Kentucky Supreme Court ruled that the eight and one-half delay that subsequently occurred is solely Smith's fault. *Id.* Smith apparently failed to appear at his March 25, 2010 and April 5, 2010 pretrial conferences, and he argues that it should be excused because his absence was involuntary based on his allegation that he was incarcerated in Ohio on separate charges. *Id.* The Kentucky Supreme Court's opinion states that Smith violated the conditions of his bond because he stopped contacting his attorney and he provided no evidence to show that he was arrested at the time of the hearings, such as by showing that he contacted his attorney while he was allegedly incarcerated at an Ohio jail. *Id.* Thus, the Kentucky Supreme Court determined that Smith's alleged out-of-state incarceration was not a valid justified reason for his delay because he failed to meet his burden of any resulting delay to the trial proceedings. *Id.*

Nothing in the record indicates why the Commonwealth moved to continue one month prior to trial or why Smith failed to appear at his pretrial proceedings. This Court cannot say that the Kentucky Supreme Court acted contrary to an established precedent or did an unreasonable application of this factor. *See United States v. Loud Hawk*, 474 U.S. 302, 314-15 (1986) (holding that the defendant's assertion of his right to a speedy trial "must be viewed in light of his other conduct" at the same time). Smith does not present any evidence to show how the court erred in considering the totality of the events weighing against Smith based off his contribution to the delay. Even assuming the trial court was negligent in granting the Commonwealth's motion for a continuance, such negligence would weigh "less heavily" than bad faith when determining whether a speedy trial violation exists. *Barker*, 407 U.S. at 531. Therefore, the Kentucky Supreme Court did not act contrary

to an established federal law or render an "unreasonable application" of federal law as required by the AEDPA when it concluded that the second factor cannot weigh in Smith's favor for his contribution to the delays. *Smith*, 361 S.W.3d at 917.

The third *Barker* factor is whether the Smith asserted his speedy trial right. This factor "is entitled to strong evidentiary weight" because "[t]he more serious the deprivation, the more likely a defendant is to complain." *Barker*, 407 U.S. at 531-32. It is undisputed that Smith asserted his right to a speedy trial orally and in writing. *Smith*, 361 S.W.3d at 917. The Kentucky Supreme Court correctly recognized that since Smith asserted his right to a speedy trial when the Commonwealth moved to continue the trial to obtain DNA samples, it had to weigh this factor in his favor. *Id.*

The fourth *Barker* factor requires the defendant to show that "substantial prejudice" resulted from his delayed trial. *United States v. DeClue*, 899 F.2d 1465, 1470 (6th Cir. 1990). The Supreme Court has identified three relevant forms of prejudice in speedy trial cases: (1) "oppressive pretrial incarceration", (2) the "anxiety and concern of the accused", and (3) "'the possibility that [the accused's] defense will be impaired' by dimming memories and loss of exculpatory evidence." *Doggett*, 505 U.S. at 654 (quoting *Barker*, 407 U.S. at 532).

First, the Kentucky Supreme Court acknowledged that an accused can be hindered in preparing his defense when he is incarcerated, as was the case in *Barker*, but Smith was released on bond for over eight months and returned to jail for violations of his bond. *Smith*, 361 S.W.3d at 918. The Kentucky Supreme Court stated that Smith was to blame for all but three weeks of his twenty months in jail and concluded that any prejudice he may have suffered was outweighed by him being admitted back to jail for bond violations. *Id.* (citing *United States v. Valenzuela-Bernal*, 458 U.S. 858, 856 (1982)). Although Smith may have been prejudiced by the fact that he was incarcerated, he

has not identified any actual prejudice in preparing his defense that would render this incarceration oppressive. *Barker*, 407 U.S. at 532-33 (stating pretrial incarcerations clearly have societal disadvantages, and "[t]he time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; disrupts family life; and it enforces idleness . . . [t]he time spent in jail is simply dead time"). Therefore, nothing in the record suggests that Smith's detention was particularly oppressive.

Second, although Smith's detention undoubtably led to anxiety and concern, the Sixth Circuit has established that a defendant must show specific prejudice that the delay impaired his defense when the government has been "diligent in its prosecution." *United States v. Young*, 657 F.3d 408, 418 (6th Cir. 2011). The Kentucky Supreme Court concluded that Smith did not make a showing that his interests were violated in any meaningful way. Therefore, nothing in the record suggests that any anxiety and concern that Smith was suffering was anything beyond that suffered by any inmate. In other words, Smith has not clearly established how his anxiety and concern caused a specific prejudice in his case.

Third, Smith claimed that his incarceration impeded his ability to pursue and investigate his defense that someone else committed the robbery. *Smith*, 361 S.W.3d at 919. Smith argued that he knew the person that committed the crime and he was prejudiced by not being able to investigate this matter further. *Id.* However, the Kentucky Supreme Court concluded that there was no evidence to suggest Smith was precluded from interviewing the alleged person who committed the robbery when he was released from jail on bond. *Id.* Of the three interests identified in *Barker* under factor four, "the most serious is the last, because the inability of a defendant to adequately prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532. Although Smith clearly asserts that he was

impeded from investigating his defense that another man committed the crime he was convicted of, he offers no evidence to support his argument that he was prevented from interviewing the other man when he was released on bond. *See Loud Hawk*, 474 U.S. at 315 (holding that the possibility of prejudice is not sufficient to support an alleged speedy trial violation). Accordingly, because of the speculative nature of his assertion, this Court cannot find that the Kentucky Supreme Court acted contrary to an established precedent or conducted an unreasonable application of this factor. Therefore, Smith's speculative allegations standing alone, are not enough to establish prejudice.

In sum, the Kentucky Supreme Court summarized its findings by stating:

> [h]aving considered each *Barker* factor individually, we must now weigh them together. First the delay in bringing [Smith's] case to trial was presumptively prejudicial, and sufficient to trigger a *Barker* inquiry. However, [Smith] was responsible for half of the delay, so the reasons-for-delay factor weighs neither for nor against him. Although he repeatedly asserted his right to a speedy trial (the third *Barker* factor), he was not prejudiced in any meaningful way by his incarceration (the fourth *Barker* factor): (1) he must bear the burden of any prejudice assumed by a twenty-month incarceration as his behavior accounts for all but three weeks of the twenty months he spent in jail; (2) he made no showing of unusual anxiety and concern; and (3) he suffered no actual prejudice to his ability to prepare a defense. Based on the foregoing, after balancing all four *Barker* factors, we conclude that [Smith's] constitutional rights to a speedy trial were not violated.

*Smith*, 361 S.W.3d at 919-20. As the Kentucky Supreme Court recognized, more than one year passed between Smith's arrest and his trial, and Smith asserted his speedy trial rights before trial, rendering the first and third *Barker* factors in Smith's favor. But, because Smith and the Commonwealth were accountable for a substantial portion of the pretrial delays, this made the second *Barker* factor weigh against Smith. Finally, since Smith has not shown that he suffered substantial prejudice from the delay, the fourth *Barker* factor weighs against finding a speedy trial violation. Considering the split among the *Barker* factors, it cannot be said that the Kentucky Supreme Court's denial of Smith's speedy trial claim was an unreasonable application of clearly established federal law. *See Brown v.*

*Bobby*, 656 F.3d 325, 337 (6th Cir. 2011) (holding that the state court's denial of a defendant's speedy trial claim was not an unreasonable application of federal law when the first and third factors favored a speedy trial, but the second and fourth did not). Moreover, Smith has not established that the Kentucky Supreme Court's decision was contrary to any Supreme Court precedent. Speedy trial determinations are a "slippery" and "difficult and sensitive balancing process" that cannot be "quantified into a specified number of days or months." *Barker*, 407 U.S. at 522-23, 533. Therefore, ground one is recommended to be denied.

### ii. Ground 2: the Kentucky Supreme Court's Affirmation of the Trial Judge's Denial of his Directed Verdict is not Contrary to or an Unreasonable Application of Established Federal Law

The crux of Smith's argument is that a directed verdict should have been granted with respect to "his robbery and unauthorized use of a motor vehicle conviction due to the 'extreme unreliability of two purported eyewitnesses.'" *Smith*, 361 S.W.3d at 920. Smith's argument is predicated on his belief that the trial court violated his right to due process when it denied his motion for a directed verdict. The standard for a directed verdict of acquittal under Kentucky law is as follows:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given.

> On appellate review, the test of a directed verdict is, if under the evidence as a whole it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.

*Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991). This means "there must be evidence of substance, and the trial court is expressly authorized to direct a verdict for the defendant if the prosecution produces no more than a mere scintilla of evidence." *Id.* at 187-88. The Commonwealth need not "rule out every hypothesis except guilt beyond a reasonable doubt." *Jackson v. Virginia*,

443 U.S. 307, 326 (1979).

The Kentucky Supreme Court held that the evidence presented by the Commonwealth was sufficient to deny Smith's directed verdict motion because the evidence included:

> (1) pawnshop owner Donny Townsend's testimony that he saw [Smith] driving Brian Simpson's Geo Tracker toward (and about twenty yards from) K.D.'s, around the time of the robbery; (2) the clerk's testimony that a man wearing bandanas covering his face came in, pointed a gun at his face, and demanded all the money from the register; (3) the clerk's testimony that the robber took about $500, and the robber was driving a teal Geo Tracker; and (4) Lloyd Davis's testimony that he saw [Smith] rob K.D.'s, and that just after the robbery he saw [Smith] drive by in a teal Geo Tracker with his face uncovered. We find this to be sufficient evidence for a juror to conclude that [Smith] committed the charged offenses beyond a reasonable doubt. The trial court did not err in denying [Smith's] motion for a directed verdict.

*Smith*, 361 S.W.3d at 920-21.

This analysis presents a reasonable application of clearly established federal law. As relied on by the trial court, the directed verdict standard is controlled by *Benham*, and this standard aligns with the requirements set out by the Supreme Court of the United States in *Jackson*, which is the standard for the sufficiency of the evidence claims under the Due Process Clause. *See Beaumont v. Commonwealth*, 295 S.W.3d 60, 67 (Ky. 2009) (holding that the *Jackson* standard is "reflective in our familiar *Benham* standard of review of review for denial of a directed verdict). In order to obtain habeas relief:

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . We hold that [a criminal defendant] is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt.

*Jackson*, at 319, 324. "A reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear on the record—that the

trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution.'" *Cavazos v. Smith*, 565 U.S. 1, 5 (2011) (quoting *Jackson*, 443 U.S. at 319).

Here, pursuant to *Jackson* and *Benham*, the Kentucky Supreme Court reasonable analyzed the evidence presented against Smith and sensibly concluded that the trail court did not error in overruling his motions for directed verdict regarding his robbery and unauthorized use of a motor vehicle conviction. The Kentucky Supreme Court determined that the evidence presented by the Commonwealth was more than a scintilla of evidence to connect Smith to the robbery and use of the Geo Tracker. This means Smith failed to establish the Kentucky Supreme Court based its decision on either a "contrary" or an "unreasonable application" of Federal law, or that the decision was "based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). Therefore, ground two is recommended to be denied.

### iii. Ground 3: the Court of Appeal's Denial of Smith's Five Claims of Ineffective Assistance of Counsel is not Contrary to or an Unreasonable Application of Established Federal Law

To prevail on ineffective assistance of counsel under Section 2254, Smith must satisfy two essential elements: (1) deficient performance and (2) prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (stating that "[u]nless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable"). First, to prove deficient performance, Smith must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. In applying this test, reviewing courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance." *Id.* To show representation fell below an objective standard of reasonableness, the petitioner must articulate specific acts or omissions to show how counsel's

performance fell "outside the wide range of professionally competent assistance." *Id.* at 690. Second, Smith must also establish prejudice by showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of his proceedings would have been different. *Id.* at 694-95. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 111-12 (citing *Strickland*, 466 U.S. at 696). "When deciding ineffective-assistance claims, courts need not address both components of the [deficient performance and prejudice] inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004); *Strickland*, 466 U.S. at 697.

Federal courts need not defer to the state court factual findings regarding the performance and/or prejudice prongs of the effectiveness analysis. *Blackburn v. Foltz*, 828 F.2d 1177, 1181 (6th Cir. 1987). However, the "underlying facts" supporting such state-court decision warrants deference. *Strickland*, 466 U.S. at 698. "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Richter*, 562 U.S. at 101. Thus, "[a] state court must be granted deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* It is "difficult" to establish a state court's application of *Strickland* as unreasonable under § 2254(d); both standards are "highly deferential, and when the two apply in tandem, review is 'doubly' so." *Id.* at 105. Habeas courts must "guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Id.* Under § 2254(d), "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* Additionally, "[t]he *Strickland* standard is a general one, so the range of reasonable applications is substantial." *Id.*

(Citation omitted).

Smith indicated in his habeas petition that he is asserting seven claims of ineffective assistance of counsel. [R. 1 at p. 9]. However, Smith asserted only five claims of ineffective assistance of counsel against Martz pursuant to RCr 11.42 in his appeal to the Kentucky Court of Appeals: (1) failure to move for a continuance when the prosecution sought a trial by ambush; (2) failure to investigate and call alibi witnesses for his defense; (3) failure to impeach the prosecution's witnesses with prior inconsistent statements and failure to cross examine them for bias and motive to fabricate; (4) failure to object to the Commonwealth using perjured testimony to convict him; (5) failure to call Kentucky State Police ("KSP") crime lab technician Joshua Hynes as a defense witness. [R. 23-2 at p. 97-99]. It is unclear what other two assertions of ineffective assistance of counsel he is asserting.

First, Smith alleged in his brief to the Kentucky Court of Appeals that he was ambushed by the Commonwealth because the Commonwealth did not inform his counsel until the day of the trial which of the two separate criminal cases against him would be going to trial that day. [R. 23-2 at p. 105]. Accordingly, Smith contends that Martz should have moved for a continuance because he was afraid Martz was confused which case was supposed to be on that day since no witnesses were present. *Id.* Respondent argues that the Kentucky Court of Appeals reasonably concluded that there was no evidence of a trial ambush because testimony from the evidentiary hearing shows that Martz was aware of the case to be tried and he discussed it with Smith, who agreed that a continuance was not needed. [R. 23 at 367]. The Kentucky Court of Appeals also noted in its opinion that Martz testified at the evidentiary hearing that he did not plan on calling any witnesses because his trial strategy was to attack the Commonwealth's witnesses. [R. 1-7 at p. 7]. This Court likewise perceives no ineffectiveness relating to Martz deciding not to move for a continuance based on his tactic to

attack the Commonwealth's witnesses. Decisions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel. *Michel v. Louisiana*, 350 U.S. 91, 101 (1955); *Ramonez v. Berghuis*, F.3d 482, 489 (6th Cir. 2007) ("[c]onstitutionally effective counsel must develop trial strategy in the true sense—not what bears a false label of 'strategy—based on what investigation reveals witnesses will actually testify to, not based on what counsel guesses they might say in the absence of a full investigation"). While trial counsel's tactical decisions are not completely immune from Sixth Amendment review, they must be particularly egregious before they will provide a basis for relief. *Martin v. Rose*, 744 F.2d 1245, 1249 (6th Cir. 1984). Smith presents no proof other than his mere concern of Martz's confusion to show how the Kentucky Court of Appeals application of *Strickland* was unreasonable. *Richter*, 562 U.S. at 105 Therefore, Smith fails to establish Martz was ineffective for failing to move for a continuance.

Second, Smith made several allegations concerning Martz's failure to investigate and call alibi witnesses. [R. 23-2 at p. 106-11]. A failure to investigate can, in appropriate circumstances, constitute ineffective assistance. *See e.g., Towns v. Smith*, 395 F.3d 251, 258-59 (6th Cir. 2005). However, Smith does not detail what an investigation would have uncovered, what specific steps counsel reasonably should have taken but failed to do, or why an investigation would have changed the outcome of his trial. *See e.g., Vergara v. United States*, 2018 WL 306284, at *2 (E.D. Mich. Jan. 5, 2018). The Kentucky Court of Appeals found that Smith did not establish how counsel's failure to investigate prejudiced the outcome of his case, because there were several eyewitnesses who connected him to the robbery. [R. 1-7 at p. 11]. Furthermore, the Kentucky Court of Appeals made factual findings that the DPA attempted to locate alibi witnesses, but the witnesses would not attend any meetings. [R. 1-7 at p. 12]. It also found that Smith did not present any evidence at the evidentiary

hearing to show how any of the alibi witnesses would have provided favorable testimony for him. Thus, Smith's mere assertion of failure to investigate and failure to call alibi witnesses does not show how the Kentucky Court of Appeals' application of *Strickland* was unreasonable. *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000) ("the relevant question is not whether counsel's choices were strategic, but whether they were reasonable"). Therefore, Smith fails to establish that Martz was ineffective for his failure to conduct an adequate investigation.

Third, Smith contends that Martz failed to impeach Lloyd Davis and Donnie Townsend and failed to introduce evidence that Brian Simpson, the owner of the Geo Tracker, was biased and had motive to fabricate testimony because of an arson charge. [R. 23-2 at p. 112-18]. The Kentucky Court of Appeals ultimately found that Smith's allegations were insufficient because Martz:

> did an admirable job of attempting to impeach and otherwise cast doubt on the witnesses that Smith identified. In the end, the jury simply chose to believe the witnesses in spite of this testimony. We do not believe that any additional impeachment or other evidence in this regard would have changed the outcome.

[R. 1-7 at p. 9-10]. The reviewing court's scrutiny of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 689. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The court must also not indulge in hindsight but must evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors. *Id.*; *Cobb v. Perini*, 832 F.2d 342, 347 (6th Cir. 1987). Thus, Smith's mere assertion that Martz should have impeached Davis and Townsend more and bring up Simpson's bias does not show how the Kentucky Court of Appeals' application of *Strickland* was unreasonable when it determined that Martz did all he could to discredit the witnesses. Therefore, Smith fails to establish that Martz was ineffective for his failure discredit the witnesses further.

Fourth, Smith argued that Martz was ineffective for failing to object to Deputy Ryan Houston's testimony because he committed perjury in testifying that there was not enough human DNA to make an examination. [R. 12-2 at p. 119-21]. Smith further argues in his fifth ground of ineffective assistance of counsel that Martz was ineffective for failing to call the KSP crime technician to support his allegation of perjury because he could have discredited the prosecution's relatively weak case. [R. 12-2 at p. 122-24]. However, the Kentucky Court of Appeals explained that the DNA evidence sent to the lab came back as inconclusive and it could not understand how this showed that Houston's testimony was perjured or how the testimony would have been helpful to his case. [R. 1-7 at p. 13]. This Court similarly perceives no ineffectiveness regarding either assertion because Smith does not show how this would have been helpful to his case. *See West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 691) (stating "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment"). "Counsel is constitutionally ineffective only if performance below the professional standards caused the defendant to lose what he otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). Accordingly, Smith does not show how the Kentucky Court of Appeals' application of *Strickland* was unreasonable when it determined that Smith could not show how Martz's failure to object to Houston's testimony or call the KSP crime technician was deficient. Therefore, Smith fails to establish that Martz was ineffective.

### iv. Grounds 5-6: the Court of Appeal's Denial of Smith's Fraud Allegation Pursuant to CR 60.02 is not Contrary to or an Unreasonable Application of Established Federal Law

Finally, Smith argues that the Kentucky Court of Appeals erred when it affirmed the trial court's denial of his CR 60.02 motion. [R. 1]. Smith states that grounds five and six are the same "due

to them being the grounds of which the CR 60.02 was filed." [R. 1-1 at p. 1]. CR 60.02 allows a movant to vacate a trial court's final judgment on several grounds, including fraud. CR 60.02(d). In order to be eligible for relief, the movant must demonstrate why he is entitled to this special, extraordinary relief." *Barnett v. Commonwealth*, 979 S.W.2d 98, 101 (Ky. 1998). The rule is not intended as an additional opportunity to re-litigate the same issues which could have reasonably been presented by direct appeal on RCr 11.42 proceeding. *McQueen v. Commonwealth*, 948 S.W.2d 415 (Ky. 1997).

Smith broadly alleges that his statutorily appointed counsel committed fraud by sabotaging his evidentiary hearing and had a conflict of interest with Martz because both work for the DPA. [R. 12-2 at p. 124-27]. Specifically, Smith argues that his representation by Foster during his RCr 11.42 evidentiary hearing deprived him of full and fair access at the hearing because Foster sabotaged the hearing since she had a conflict of interest with Martz. [R. 1-1]. The Kentucky Court of Appeals addressed Smith's CR 60.02 appeal by holding that Smith's assertion of fraud to protect Martz lacked any evidence to support fraud because Foster properly questioned Martz, properly inquired into all avenues of Smiths claims, introduced exhibits to the court, was prepared, organized, and provided sound representation. [R. 1-7 at p. 14].

Smith's claims of error are unpersuasive because the record reflects that he did not meet his burden of proving that he was entitled to the extraordinary relief. Smith merely speculates that the reason he lost was because Foster intentionally lost her case to protect another DPA attorney. Although the Kentucky Court of Appeals cites no United States Supreme Court law, its conclusions are in line with precedent. This court "must defer to the state courts' findings with respect to primary or historical facts, which are rebuttable only by clear and convincing evidence." *Apanovitch v. Houk*,

466 F.3d 460, 473 (6th Cir. 2006). Accordingly, this Court concludes that the Kentucky Court of Appeals correctly analyzed this claim based off its determination that Smith's claim lacked evidence. Smith does not present any contrary evidence to rebut the Kentucky Court of Appeals' factual finding that Foster inquired adequately into many avenues, entered exhibits into court, and provided sound representation. In other words, Smith cannot show how this was contrary to clearly established federal law or how this determination was an unreasonable determination of the facts in light of the evidence presented to the state court. Therefore, it is recommended that grounds five and six be denied.

## IV.    CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Proceedings, the district court must issue or deny a Certificate of Appealability ("COA") when it enters a final order adverse to the applicant. A COA may be issued only if the petitioner made a substantial showing of the denial of constitutional rights. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirements associated with a "substantial showing of the denial of a constitutional right," stating that in cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurist would not debate the denial of Smith's Section 2254 petition or

conclude that the issues presented are adequate to deserve encouragement to proceed further as it relates to the merits of his claims and the finding of procedural default. *Cockrell*, 537 U.S. at 327 (citing *Slack*, 529 U.S. at 484). Therefore, it is recommended that a certificate of appealability be denied upon the District Court's entry of its final order in this matter.

## V.  RECOMMENDATION

Therefore, IT IS RECOMMENDED that Smith's petition for relief under 28 U.S.C. 2254 be DENIED and this matter DISMISSED with prejudice,  and that no certificate of appealability should issue.  Smith's petition fails to meet the requirements in Rule 2 of the Rules Governing Section 2254 Habeas Cases requiring that he provide sufficient factual and legal support for his claims.  In addition, the petition should be  DISMISSED for the following reasons:

(1)     Grounds 4 and 7-14 be DENIED as procedurally defaulted;

(2)     Grounds 1-3 and 5-6 be DENIED as meritless;

\*\*\*\*\*

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Recommended Disposition. Particularized objections to this Recommended Disposition must be filed with the Clerk of the Court within fourteen days of the date of service or further appeal is waived. FED. R. CIV. P. 72(b)(2); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of written and specific objections. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are not sufficient to preserve the right of appeal. *Howard v. Secretary of HHS*, 932 F.2d 505, 508-09 (6th Cir. 1991). A party may respond to another party's objections within fourteen days

of being served with a copy of those objections. Fᴇᴅ. R. Cɪᴠ. P. 72(b)(2).

Signed February 21, 2020.



Signed By:
*Edward B. Atkins*
United States Magistrate Judge